**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

CALDWELL D. LOWRANCE, JR. )
and KCL-JLC, L.P., )
                        )
         Plaintiffs, )
                        )
         v. )   C.A. No. 2024-0854-BWD
                        )
FBSCIENCES HOLDINGS, INC., )
VALENT BIOSCIENCES LLC, and )
WILMINGTON TRUST, N.A., )
                        )
         Defendants. )

## ORDER RESOLVING PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WHEREAS:

A.      On January 25, 2023, FBSciences Holdings, Inc. ("FBSciences" or the "Company") and Valent BioSciences LLC ("Valent") entered into an Agreement and Plan of Merger (the "Merger Agreement") under which Valent agreed to acquire all outstanding shares of FBSciences (the "Merger"). Verified Compl. [hereinafter Compl.] ¶ 1, Dkt. 1; Defs. FBSciences Hldgs., Inc. and Valent BioSciences LLC's Answer to Verified Compl. [hereinafter Answer] ¶ 1, Dkt. 10.

B.      Prior to the Merger, Caldwell D. Lowrance, Jr. owned shares of Series A preferred stock and common stock, and KCL-JLC, L.P. (together with Lowrance, "Plaintiffs") owned shares of common stock, of FBSciences. Compl. ¶¶ 5–6; Answer ¶¶ 5–6. Under the terms of the Merger Agreement, Plaintiffs were entitled

to receive cash consideration for their shares (the "Merger Consideration"). Compl. ¶ 12; Answer ¶ 12; Pls.' Mot. for J. on the Pleadings, Ex. B [hereinafter Agt.] §§ 3.1(a), (d), Dkt. 11.

C.      Section 3.5(a) of the Merger Agreement requires a paying agent to deliver a letter of transmittal to record holders with instructions for surrendering their stock certificates:

> As soon as reasonably practicable (but in no event later than two (2) Business Days) after the Closing Date, the Paying Agent shall deliver to every holder of record of shares of Company Capital Stock that were issued and outstanding immediately prior to the Effective Time, at his, her or its address, as set forth in the Payment Spreadsheet: (i) a letter of transmittal in the form and substance mutually agreeable to the Parties (the "Letter of Transmittal"), (ii) instructions for completion and delivery of the Letter of Transmittal to the Paying Agent and (iii) instructions for effecting the surrender of certificates or instruments that immediately prior to the Effective Time represented issued and outstanding shares of Company Capital Stock (the "Certificates") and any book-entry shares which immediately prior to the Effective Time represented shares of Company Capital Stock (the "Book-Entry Shares").  The Letter of Transmittal shall specify that delivery shall be effected, and risk of loss and title shall pass, only upon receipt of the Certificates by or transfer of the Book-Entry Shares to the Paying Agent, together with a properly completed and duly executed Letter of Transmittal.

Compl. ¶ 13; Answer ¶ 13; Agt. § 3.5(a).

D.      Section 3.5(c) states: "No interest shall accumulate on any cash payable in connection with the Merger (other than interest accrued on the cash in the Escrow Fund in accordance with the Escrow Agreement)."  Agt. § 3.5(c).

E.    Section 13.16 includes a non-recourse provision (the "Non-Recourse Provision") stating that nonparties to the Merger Agreement shall not have any liability or indemnification obligations in connection with the Merger.  *Id.* § 13.16.

F.    The Merger closed in March 2023.  Compl. ¶ 11; Answer ¶ 11.  In June, the paying agent, Wilmington Trust, N.A. ("Wilmington Trust"), sent Plaintiffs a letter of transmittal (the "Letter of Transmittal") purporting to waive "appraisal rights or dissenter's rights" and prohibit the signatory from:

> commenc[ing], maintain[ing], prosecut[ing], participat[ing] in or voluntarily aid[ing] any Action, in law or in equity, in any court or before any Governmental Authority, which (i) challenges the validity of or seeks to enjoin the operation of any provision of the Written Consent, the Merger Agreement, any other Transaction Document, the Merger or the other transactions contemplated by the Merger Agreement, or (ii) alleges that the execution and delivery of the Merger Agreement by the Company and/or the consummation of the Merger and the other transactions contemplated by the Merger Agreement was a breach of any fiduciary duty of the board of directors of the Company or any member thereof.

Compl. ¶ 14; Answer ¶ 14; Pls.' Mot. for J. on the Pleadings, Ex. A [hereinafter LOT] at 1; Transmittal Aff. of Ben Lucy, Esq., for Valent Defs.' Mot. for Summ. J. [hereinafter Lucy Aff.], Ex. 5 at 4–5, Dkt. 15.

G.    The Letter of Transmittal also stated that the signatory "agree[d] to be bound by and comply with the terms and conditions of the Merger Agreement, as it applies to the Company Stockholders, as though the Undersigned were a party to the Merger Agreement."  LOT at 2.

3

H.     Nearly one year later, on May 1, 2024, Lowrance sent Wilmington Trust revisions to the Letter of Transmittal, striking all release provisions therein. Pls.' Mot. for J. on the Pleadings, Ex. B at 2; *see* Lucy Aff., Exs. 5–6.

I.     On August 15, Plaintiffs initiated this action through the filing of a Verified Complaint (the "Complaint") seeking a declaratory judgment that release provisions in the Merger Agreement and the Letter of Transmittal are invalid and unenforceable and that Plaintiffs are entitled to the Merger Consideration without releasing claims for breach of fiduciary duty.  Compl. ¶¶ 25–29.

J.     FBSciences and Valent answered the Complaint on October 9. Dkt. 10.[1]

K.     On April 2, 2025, Valent agreed to pay Plaintiffs the Merger Consideration without requiring them to sign the Letter of Transmittal.  Lucy Aff., Ex. 8 at 1.  On April 4, Plaintiffs moved for judgment on the pleadings ("Plaintiffs' Motion for Judgment on the Pleadings").  Dkt. 11.  Plaintiffs' Motion for Judgment on the Pleadings argues that release provisions in the Merger Agreement (including the Non-Recourse Provision) and the Letter of Transmittal are invalid.  Opening Br. in Supp. of Pls.' Mot. for J. on the Pleadings [hereinafter POB] at 6–12, Dkt. 11.

---

[1] Plaintiffs agreed that the paying agent, Wilmington Trust, was not required to answer the Complaint.  Lucy Aff., Ex. 8 at 5–6.

Plaintiffs' proposed order includes an award of interest on the Merger Consideration. Proposed Order Granting Pls.' Mot. for J. on the Pleadings, Dkt. 11.

L.     Valent wired $2,078,923.81 to Plaintiffs in satisfaction of their claim for Merger Consideration on June 3.  Lucy Aff., Ex. 9 at 1–3.  Defendants moved for summary judgment ("Defendants' Motion for Summary Judgment") on August 14.  Valent Defs.' Mot. for Summ. J., Dkt. 15.  Defendants' Motion for Summary Judgment argues that (1) Plaintiffs' claims against Valent and Wilmington Trust are time-barred, (2) Plaintiffs are not entitled to interest on the Merger Consideration, and (3) Plaintiffs' challenges to the Merger Agreement's Non-Recourse Provision and the Letter of Transmittal are unripe and Plaintiffs lack standing to pursue them.  Valent Defs.' Opening Br. in Supp. of Their Mot. for Summ. J. and Answering Br. in Opp'n to Pls.' Mot. for J. on the Pleadings at 15–25, Dkt. 15.

NOW, THEREFORE, IT IS HEREBY ORDERED, this 17th day of July 2026, as follows:

1.     Plaintiffs' request for an award of interest on the Merger Consideration is DENIED.

a.     Plaintiffs waived their request for interest on the Merger Consideration by failing to brief the request in their opening brief in support of the Motion for Judgment on the Pleadings, or even to request interest in the Complaint.

5

Although Plaintiffs included an award of interest in their proposed order, their opening brief did not mention, let alone provide legal support for, an award of interest on Merger Consideration that the Company eventually paid them. "Issues not briefed are deemed waived." *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999); *see also, e.g.*, *Winklevoss Cap. Fund, LLC v. Shaw*, 2024 WL 3888757, at \*23 (Del. Ch. Aug. 21, 2024) (explaining that "the right to prejudgment interest 'is not self-executing'" and finding plaintiffs waived any right to interest by asking for it "in a footnote" (quoting *Whittington v. Dragon Gp. L.L.C.*, 2011 WL 1457455, at \*15 (Del. Ch. Apr. 15, 2011))).[2]

      b.    Even if the issue was not waived, Plaintiffs cannot obtain interest on the Merger Consideration. "A successful plaintiff is entitled to interest on money damages as a matter of right from the date liability accrues." *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 409 (Del. 1988). But Plaintiffs seek an award of interest on Merger Consideration at the legal rate, which applies only "[w]here there is no expressed contract rate." 6 *Del. C.* § 2301(a). Section 3.5(c) of the

---

[2] To the extent Plaintiffs seek their "pro rata portion of the Defense Fund," this argument is also waived because Plaintiffs failed to raise it until their reply brief. Pls.' Reply Br. in Supp. of Their Mot. for J. on the Pleadings and Opp'n to Defs.' Mot. for Summ. J. [hereinafter PRB] at 24, Dkt. 17. "Claims made for the first time on reply are deemed waived." *Advent Int'l Corp. v. Servicios Funerarios GG S.A. de C.V.*, 2024 WL 3580934, at \*9 n.94 (Del. Ch. June 7, 2024). In any event, Defendants represent that the Defense Fund has been exhausted and Plaintiffs' pro rata share is zero. Valent Defs.' Reply Br. in Supp. of Their Mot. for Summ. J. at 17–18, Dkt. 19.

Merger Agreement specifies a contract rate; it provides that "[*n*]*o interest* shall accumulate on any cash payable in connection with the Merger."  Agt. § 3.5(c) (emphasis added).

c.  Plaintiffs provide no legal basis for ignoring Section 3.5(c) and awarding interest on the Merger Consideration anyway.  They argue that under 8 *Del. C.* § 251(b)(5), their right to the Merger Consideration "automatically vest[ed]" at closing, such that Defendants' failure to immediately pay the Merger Consideration without improper conditions violated the statute.  POB at 7–8; PRB at 3–4.  Even if that were true, however, Plaintiffs do not identify a legal basis for concluding that improperly withholding the Merger Consideration rendered Section 3.5(c) of the Merger Agreement inapplicable.

d.  To the extent Plaintiffs rest their argument on equitable considerations, Plaintiffs' decision to wait more than a year after the Merger closed before rejecting the release provisions in the Letter of Transmittal and filing suit convinces me that it is not inequitable to deny an interest award.

2.  Plaintiffs' claim for a declaratory judgment concerning the validity of the release provisions in the Merger Agreement and Letter of Transmittal is unripe. "This Court will decline subject matter jurisdiction over a claim that is not ripe." *Nask4Innovation Sp. Z.o.o. v. Sellers*, 2022 WL 4127621, at *4 (Del. Ch. Sep. 12, 2022).  "In determining whether a dispute is ripe, the Court must take a practical

7

view of all relevant facts and make a common-sense determination of whether adjudicating a dispute at present is a prudent use of judicial resources." *Id.* "[T]he benefits to be derived from issuing a declaratory judgment must be weighed against the court's desire to avoid advisory opinions." *In re Allergan, Inc. S'holder Litig.*, 2014 WL 5791350, at *6 (Del. Ch. Nov. 7, 2014). Under similar facts, this Court previously concluded that a stockholder's challenge to a "release included in a letter of transmittal" was not ripe where the stockholder had "not filed any other claims implicating the letter of transmittal or the releases contained therein" and as a result, the defendants "ha[d] not raised the releases as a defense to any such claim." *Nask4Innovation Sp. Z.o.o.*, 2022 WL 4127621, at *1. The Court found that the plaintiffs' "claims [we]re not ripe" and that "opining on the enforceability of the release would be improperly advisory." *Id.* The same result obtains here. The declaratory judgment count is DISMISSED without prejudice for lack of subject matter jurisdiction.

3. To the extent Plaintiffs seek to invalidate provisions in the Letter of Transmittal, dismissal is appropriate for an additional reason: Plaintiffs did not sign the Letter of Transmittal, are not parties to it, and therefore lack standing to challenge the provisions therein. "To achieve standing, a plaintiff must allege an injury in fact that is both concrete and actual or imminent." *Albence v. Mennella*, 320 A.3d 212, 216 (Del. 2024). Plaintiffs received the Merger Consideration without

8

signing the Letter of Transmittal and have suffered no harm from the provisions therein.

4. Because the action is dismissed on other grounds, the Court does not reach Defendants' argument that claims against Valent and Wilmington Trust are time-barred under Section 3.5(f) of the Merger Agreement.

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor